UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

PAMELA BRYANT,                                    MEMORANDUM AND ORDER

              Plaintiff,                          CV 13-3962

      -against-                                   (Wexler, J.)

DOV J. BERKOWITZ, M.D.,

              Defendant.
----------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAR 28 2016   ★

**LONG ISLAND OFFICE**

APPEARANCES:

The Law Office of Elliot F. Bloom PC
By: Elliot F. Bloom, Esq.
1551 Kellum Place, Second Floor
Mineola, NY 11501
Attorneys for Plaintiff

Garfunkel Wild, P.C.
By: Andrew L. Zwerling, Esq.
    Jason Hsi, Esq.
111 Great Neck Road
Great Neck, NY 11021
Attorney for Defendant

WEXLER, District Judge:

      In this diversity action, Plaintiff Pamela Bryant ("Bryant" or "Plaintiff") brings a claim

for sexual assault and battery against her doctor, Dov J. Berkowitz, M.D. ("Berkowitz" or

"Defendant"). Following a bench trial before this Court, and having considered the parties'

post-trial submissions, the Court makes the following findings of fact and conclusions of law on

Plaintiff's claim.

<u>FINDINGS OF FACT</u>

I.    <u>The Parties</u>

      1.    Plaintiff Pamela Bryant is a resident of the North Carolina. Amended Pre-

Trial Order ("APTO") , ¶ 1.

2.      Defendant Dov Berkowitz is an orthopedic surgeon licensed to practice in

New York with an office in East Meadow, New York.  APTO, ¶ 2.

3.      On September 12, 2012, Plaintiff was in a car accident in New York and

sustained injuries to her shoulder and other parts of her body.  Her attorney

referred her to Dr. Berkowitz for treatment.

4.      Plaintiff was examined by Defendant Berkowitz on December 28, 2012 in

connection with those injuries, and he recommended surgery.  APTO, ¶ 4.

5.      On January 16, 2013, Defendant Berkowitz performed orthopedic surgery

on Plaintiff's right shoulder.  APTO, ¶ 5.

6.      Plaintiff had her first post-operative appointment with Defendant on

January 22, 2013.  APTO, ¶ 6.

7.      Plaintiff went to Defendant's office in East Meadow for a second follow-

up appointment on February 26, 2013, but after waiting in the waiting

room, left without being seen.  Trial Transcript, ("Tr."), 147-149.

8.      Plaintiff returned for an office visit on March 12, 2013.  APTO, ¶ 7.

II.      The March 12, 2013 Examination and Videotape

9.      Plaintiff brought a pen video-recorder to her appointment on March 12,

2013, and while hiding the pen camera in a book, recorded Defendant's

examination of her without Defendant's knowledge.  APTO, ¶ 8; Tr., 24-

25.

10.     She brought the camera because the language he used at an earlier

-2-

appointment, such as "baby", "sweetheart", made her uncomfortable. Tr.,
22-23.

11.     The video does not capture much of the Defendant's actions, which are
        off-screen. See Plaintiff's Exhibit ("Pl. Ex.") 1.  The videotape shows that
        upon entering the examination room, Defendant asked Plaintiff about her
        pain, and she indicated she had pain "where the bone is sticking out,"
        stating that she feels like there is "something shooting through."
        Defendant stated that he wanted to "calm that feeling down."  Plaintiff is
        heard complaining of "sharp" pain when he touched her in certain places;
        saying she was feeling something sticking, like "daggers."

12.     Defendant advised Plaintiff there is "no bone is coming out of place," and
        that she needed to calm down a bit.  He acknowledged that she was feeling
        a lot of pain.  He inquired about the physical therapy treatment she was
        receiving, moving her arm and noting the progress of her arm movement.
        He suggested that she continue physical therapy to help her range of
        movement so she doesn't feel nervous.  Plaintiff said she was feeling
        random sharp pain.

13.     At one point, Defendant tells Plaintiff she is "the cutest thing in the
        world," as he continues to move her arm.  Plaintiff expressed a lot of pain
        as her arm is moved, and reacted audibly in pain when Defendant moved
        her arm.  He then applied pressure to various places, none of which are
        identifiable on the video.   The video does show Defendant moving

-3-

Plaintiff's arm up and down, with Plaintiff indicating where and when she has pain in response.

14.     At a certain point, Defendant's attention turns to Plaintiff's scar, and she asks for an injection where a scar is "keloiding" on her shoulder. Defendant examines the scar, and as Plaintiff says she doesn't want it to grow anymore, he says, "A beauty like you shouldn't have that." Defendant appears to be massaging Plaintiff's arm and shoulder, asking, "Does that feel good?" Plaintiff is heard responding, "Yes, thank you. That's relaxing. Therapeutic."

15.     Plaintiff says it "[f]eels like something is 'dagging' up here," and the Defendant moves her arm to work on the range of movement of her right arm.

16.     At one point, Plaintiff says, "I appreciate your time," asking if he spends that time with everyone. She asks, "Am I going to get better?" Defendant responded, "Yes, you are going to get better. Don't get frightened."

17.     Defendant says that although the keloid injections are done by the dermatologist, he will do it for her, although he cannot guarantee that it will help. Before Defendant leaves the room, he comes close to Plaintiff, maybe to hug her, but the video is unclear. The video shows that he puts his face to the right of her face. She thanks him and he leaves.

18.     A staff member from the office comes to prepare the injection while Plaintiff sits in the room. There is no conversation between the two, other

than Plaintiff asking if Dr. Berkowitz will be administering the injection.

19.   When Defendant returns, he examines the scar on Plaintiff's shoulder and injects the keloid. Defendant again informed her there is no guarantee it will get better, and could get worse, but is doing this for her. She thanks him. He encourages her to relax, and performs the injection.

20.   The Defendant then sits down on the examination table along Plaintiff's right side, asking, "Can I join you?" He proceeds to rub or massage her right side but the video does not show where exactly. Plaintiff then asks him, "Do you give all your patients this kind of time?" He response is inaudible. He then says, "Does this feel good?" She responds, "Yes, thank you." She adds, "I think you like touching me." He responds, "I do." His cell phone rings and he takes the call, and then resumes the examination.

21.   The video does not show what part of her body he is examining. Defendant says, "If I'm touching you in any way that makes you uncomfortable, I hope that you'd tell me." She tells him that she appreciates him giving her the injection. He repeats that if she thinks he's doing something inappropriate, she tell him. She says she will. He doesn't want her to be upset. She responds, "Upset? Why would I be upset?" He noted that earlier, she asked whether he liked touching her, and he didn't want her to be uncomfortable. She says "thank you" and asks if she can put her shirt back on.

-5-

22.     As Plaintiff prepares to leave, he helps her with her jacket.  He expresses his concern that she thinks he "crossed a line with her" and she says he shouldn't be thinking that.  She thanks him for helping with her jacket, and says, "I'll see you next time."

23.     As Plaintiff goes to leave, Defendant leans in to Plaintiff.  Plaintiff claims Defendant leaned in to kiss her, and she turned her head.  Tr. 41-43.  The videotape is unclear if contact is made, although it does show that his head is to the side of hers.  He steps back and says, "When would you like to come back?"  She'd like to come back in two weeks, and they discuss making the next appointment, and then both leave to continue making the appointment with his staff.

24.     The appointment lasted approximately 30 (thirty) minutes.

25.     As Plaintiff leaves that office, she did not inform any staff members or otherwise complain about Defendant's behavior.  Tr., 65-66.

IV.     Post-Examination Conduct

26.     Plaintiff was next examined by Defendant on April 9, 2013.  This examination was not recorded.

27.     At the April 9th appointment, Plaintiff made an appointment for May 2013, but Plaintiff never went or returned to Defendant's office.  This lawsuit was filed in June 2013.

28.     Plaintiff did not contact law enforcement in connection with the alleged assault.  Tr., 122.  Nor did Plaintiff inform her insurance carrier about the

alleged assault by the doctor, or request a different treating physician.  Tr., 70, 122.

29.     Plaintiff testified that she sought counseling for the stress and anxiety she suffered following the incident from Lawrence McEachern, a clinical counselor.  Tr. 47-48.

### CONCLUSIONS OF LAW

I.     Sexual Assault and Battery

30.     Plaintiff's complaint lists one cause of action - for "Sexual Assault (Battery)."  The Court will consider this as a claim for battery and a claim for assault.

31.     Under New York law, the intentional tort of battery is committed when a "person intentionally touches another, without that person's consent, and causes an offensive bodily contact."   New York Pattern Jury Instructions 2d ("NY PJI") 3:3.   The intent must be to cause bodily contact that a reasonable person would find offensive.  Armstrong ex rel. Armstrong v. Brookdale University Hospital and Medical Center, 425 F.3d 126, 134 (2d Cir. 2005) (citing Jeffreys v. Griffin, 1 N.Y.3d 34, 769 N.Y.S.2d 184, 189 n. 2, 801 N.E.2d 404 (2003) and NY PJI 3:3).

32.     Assault differs from battery in that it does not require actual contact.  A claim for assault requires proof of the intentional placing of another in apprehension of imminent harmful or offensive contact.  Fugazy v. Corbetta, 34 A.D.3d 728, 729, 825 N.Y.S.2d 120, 122 (2d Dept. 2006);

-7-

NY PJI 3:2. An assault requires physical conduct that causes another to become concerned that the defendant is about to cause a harmful or offensive contact. Butler v. Magnet Sports & Entertainment Lounge, Inc., 135 A.D.3d 680, 23 N.Y.S.3d 299 (2d Dept. 2016) (citing Fugazy, 34 A.D.3d at 729);  Marilyn S. v Independent Group Home Living Program, Inc., 73 A.D.3d 892, 894, 903 N.Y.S.2d 403 (2d Dept. 2010).

33.     The Court finds that Defendant's conduct, while questionable, does not rise to the level of battery.  Plaintiff has failed to provide proof that Defendant intended to cause bodily contact that a reasonable person would find offensive.  The video reflects that indeed, throughout the examination, there is bodily contact as Defendant examined and prodded the surgical site, as well as manipulated Plaintiff's right arm to determine the scope and range of her movement, yet this is the sort of contact that a patient would expect to receive from a doctor during a post-surgical exam.  While the Plaintiff may have become uncomfortable with Defendant's touching or word choice, there is no basis to find that such conduct would be deemed offensive to a reasonable person in that same situation.  Thus, Plaintiff's claim for battery fails.

34.     Plaintiff's claim for assault also fails.  This claim requires Plaintiff to prove that Defendant intentionally caused her to be apprehensive of imminent harmful or offensive contact.

35.     Defendant uses language and conduct that is of questionable judgment –

-8-

such as telling her she is "the cutest thing in the world" or leaning in towards her for what appears on the video to be a hug – he also encourages her to let him know if he is making her uncomfortable in any way, or "crossing" the line. Rather than making her apprehensive of imminent offensive contact, he is trying to assuage her of any such apprehension. The Court finds that Plaintiff has not stated a claim for assault.

CONCLUSION

For the foregoing reasons, Plaintiff's claims are dismissed. The Clerk of the Court is directed to enter judgment for the Defendant and close this matter.

SO ORDERED.

s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       March 2016